*University of Maryland Medical System Corporation et al. v. Brandon Kerrigan, a minor et al.*, No. 3, September Term, 2017. Opinion by Greene, J.

**CIVIL PROCEDURE—RULE 2-327(c) MOTION TO TRANSFER—PLAINTIFF'S CHOICE OF VENUE**

The Court of Appeals held that a Circuit Court judge's order to transfer the case from Baltimore City to Talbot County was not an abuse of discretion. The Court of Appeals applied the principle, recognized in *Leung v. Nunes*, 354 Md. 217, 729 A.2d 956 (1999), and properly applied in *Stidham v. Morris*, 161 Md. App. 562, 870 A.2d 1285 (2005), that held that although the plaintiff's choice of venue receives deference as the presumed convenient forum for the plaintiff, that deference is minimized when the plaintiff does not reside in that forum. The plaintiffs did not reside in Baltimore City, their chosen venue, but rather resided in Talbot County, the venue where the Circuit Court transferred the case. Based on the facts of the case, the convenience of the parties and witnesses and the interests of justice weighed strongly in favor of transfer.

Circuit Court for Baltimore City
Case No. 24-C-15-002333
Argued: September 6, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 3

September Term, 2017

_____

UNIVERSITY OF MARYLAND MEDICAL
SYSTEM CORPORATION *et al.*

v.

BRANDON KERRIGAN, a minor *et al.*

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Greene, J.
Barbera, C.J., Adkins and McDonald, JJ.,
dissent.

_____

Filed: November 28, 2017

The fundamental inquiry before us in this case is the proper application of the standard of appellate review to a trial court's order to transfer a case pursuant to Maryland Rule 2-327(c). Although the underlying facts of this case involve alleged medical malpractice, it is before us because of the Circuit Court for Baltimore City's grant of the Defendants' motion to transfer the case to Talbot County. The Court of Special Appeals reversed the hearing judge's grant of the motion to transfer, holding that the moving party failed to meet its burden of demonstrating that the convenience of the parties and the interests of justice supported transfer of the case from Baltimore City to Talbot County. Because we determine that the Circuit Court did not abuse its discretion when it concluded that the case should be transferred to Talbot County, we shall reverse the judgment of the Court of Special Appeals.

## I.

As a result of the procedural posture of this case, the facts are queued up by the parties' pleadings. With the exception of limited factual findings by the Circuit Court related to the residency of the parties, the parties have not litigated the remaining allegations. We provide a summary of the allegations here for context only. Brandon Kerrigan and his parents, Kimberly and Michael Kerrigan, ("Respondents"), live in Bozman, a community located in Talbot County. Brandon, through his parents and with them in their individual capacities, filed a medical malpractice action in May 2015 against seven defendants: three medical systems, the University of Maryland Medical System Corporation, the University of Maryland Shore Regional Health, Inc. ("Shore Medical"), and Delmarva Radiology, PA, and four doctors in their individual capacities, Drs. David

White, Dayanand Bagdure, Nicole Mallory, and Steven Sauter ("Petitioners"), in the Circuit Court for Baltimore City.

In August of 2013, Brandon, age fifteen, visited his Talbot County physician, Dr. Mark Langfitt, after experiencing shortness of breath and a prolonged period of dry coughing. Dr. Langfitt referred Brandon to Delmarva Radiology to receive a chest X-ray for further examination. Dr. Steven Sauter reviewed the X-ray results at Delmarva Radiology and diagnosed Brandon with atypical pneumonia. Thereafter, Dr. Langfitt prescribed Brandon five days of antibiotics.

Brandon's symptoms persisted. He was admitted to the emergency room at Shore Medical, where an examination revealed indicators of potential heart failure. Dr. David White directed that Brandon receive intravenous fluids while Brandon waited to receive further testing to confirm the condition of his heart. Dr. White consulted with Dr. Dayanard Bagdure, of the University of Maryland Medical System Corporation, who agreed to treat Brandon after an emergency transfer, by helicopter, to the University of Maryland in Baltimore City. Brandon received fluids until he completed them during the helicopter ride, where he coded on his way from Talbot County to Baltimore City.

Upon admission to the University of Maryland, Brandon's treating physicians changed his diagnosis from heart failure to septic shock. After arrival, Brandon received a second blood test, the results of which confirmed heart failure. At the University of Maryland, Brandon had received over four liters of IV fluids during a fourteen hour period before he received any diuretics. Four months after his admission, Brandon received a heart transplant.

After the Kerrigans filed suit in May 2015, the seven Petitioners jointly filed a motion to transfer venue from Baltimore City to Talbot County, pursuant to Rule 2-327(c), and requested a hearing. After a lengthy hearing, the Circuit Court granted the motion to transfer and delivered an eight-minute oral decision from the bench. The hearing judge clarified that he had considered the motion on *forum non conveniens* grounds:

> And, obviously, this is not a claim that the forum is improper. It's not a motion to dismiss for an improper forum.
>
> It's a motion under the *forum non conveniens* analysis as to whether the case as it is and whether the factors *balance heavily* in favor of transfer to the suggested jurisdiction of Talbot County.
>
> I have weighed those factors, and I do find that *those factors do weigh strongly* in favor of transfer. There are a number of things that I considered.

The hearing judge explained that his first consideration in the balancing test was convenience to the parties and witnesses:

> First, with respect to *the balance of convenience* of the parties and the witnesses, as counsel for the defendant has pointed out, seven of the ten named parties in the case, plaintiff and defendants, are in Talbot County.
>
> I was struck by the fact and it was pointed out by defense counsel that plaintiffs actually must pass the Circuit Court for Talbot County on the way to the Circuit Court for Baltimore City.
>
> I was unpersuaded by the exhibit and statistics presented by plaintiffs' counsel as to the witnesses. I don't find the fact that the transplant team is in Baltimore City is of significance.
>
> The primary and key witnesses that would be testifying in this case – obviously, everyone has noted that it's hard to say who will actually testify. But you're not going to have 500 and some care providers who may have touched the treatment at some point testify at trial. But it's clear that the significant balance is in favor of those who would be inconvenienced significantly coming from Talbot County to Baltimore City.

3

Next, the hearing judge explained that consideration of public interest, including the burden on the public, weighed in favor of transfer to Talbot County:

> As to the statistical analysis with respect to the other prong, the *public interest*, I was not persuaded by the statistics as argued by plaintiffs' counsel. The numbers don't bear out in what I reviewed in the annual statistical abstract as to the courts' dockets.
>
> Of course, I certainly am not saying that we're here in Baltimore City . . . looking to avoid having additional cases. We certainly can handle everything that comes at us, and we do. But the numbers do not support plaintiffs' position. The numbers, in fact, would weigh in favor – strongly in favor of the transfer.
>
> With respect to *the burden on the public*, again, both with respect to the jury duty issue, clearly there's a heavier burden here in the city than in Talbot County, based on just the numbers submitted and the number of trials that are recorded as having taken place. . . .
>
> [T]he other component of *the public interest* that I was considering was the question with respect to the parties' interest or the public's interest in the health care that's provided in the jurisdiction. I was persuaded by the defense argument noting that the sole institution in Talbot County providing medical care is a party defendant in the case. So compare that to Baltimore City where there are several large medical institutions. The Court does find that there is a significantly stronger interest in Talbot County in the handling of this matter, the outcome of this matter than in Baltimore City.

The hearing judge noted that he considered other factors as well. Ultimately, upon weighing the various considerations *and* allocating appropriate deference to the plaintiffs for their choice of venue, the hearing judge found that transfer to Talbot County was appropriate. He said:

> *Other factors* that were mentioned in terms of location of documents, evidence, service of process, I don't find that those factors weigh in favor of either the plaintiff or – plaintiffs or defendants.
>
> But at bottom, the Court sees many motions to transfer, noting that *plaintiff is afforded deference* with respect to choice of venue.

4

And in many cases, it comes down to, well, it would certainly be more convenient for it to be in, for example, Cecil County than in Baltimore City, but not *strong* – in terms of the factors, the factors would not weigh strongly in many cases.

But in this case, I see this as, far and away, one of the strongest in terms of weighing in favor of transfer to Talbot County. That the inconvenience of the parties and the witnesses would be tremendous if the matter were handled in Baltimore City. And that it serves the interest of justice to transfer the matter to Talbot County. So the motion to transfer is granted. . . .

It doesn't change my decision [that there will be, at a minimum, six physicians that will be called to trial from the University of Maryland and that there are two doctors down there and there are two doctors up here]. I find that *the balance weighs strongly in favor . . .* even given those arguments, in favor of transfer.

(Emphasis added).

## II.

The Kerrigans noted an appeal to the Court of Special Appeals from the Circuit Court's order to transfer the case to Talbot County. The Court of Special Appeals reversed the Circuit Court in an unreported opinion, holding that, like in *Scott v. Hawit*, 211 Md. App. 620, 66 A.3d 60, *cert. denied*, 434 Md. 314, 75 A.3d 919 (2013), the balance of the factors did not weigh strongly in favor of transfer but rather weighed in "near equipoise."

The University of Maryland Medical System Corporation, *et al.*, filed a petition for certiorari, which we granted. *Univ. of Md. Med. Sys. Corp. v. Kerrigan*, 452 Md. 5, 155 A.3d 891 (2017). The certiorari petition contained three questions.[1] We find the Court of

---

[1] The Petitioner presented the following questions to this Court:
  1. Whether the Court of Special Appeals substituted its judgment and failed to defer to the wide discretion owed to the lower court's reasons in support of transfer?

5

Special Appeals' action in reframing the questions and condensing them into a single question for clarity more apropos. Accordingly, we adopt the following question to be resolved:

> Did the Circuit Court abuse its discretion by granting the motion to transfer venue?

We answer no.

### III.

When faced with the task of reviewing transfers granted pursuant to Rule 2-327(c), this Court has resolutely applied an abuse of discretion standard. *Odenton Dev. Co. v. Lamy*, 320 Md. 33, 40, 575 A.2d 1235, 1238 (1990). Although appellate courts do not rubberstamp the rulings of trial court judges, appellate courts "should . . . be reticent" to substitute their own judgment for that of the trial court unless they can identify "clear abuse" of the wide latitude given to trial courts when ruling on Rule 2-327(c) motions. *Urquhart v. Simmons*, 339 Md. 1, 17–19, 660 A.2d 412, 420–21 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S. Ct. 252, 266, 70 L. Ed. 2d 419, 436 (1981)); *see Lapides v. Lapides*, 50 Md. App. 248, 252, 437 A.2d 251, 254 (1981) ("The exercise of a judge's discretion is presumed to be correct, he [or she] is presumed to know the law, and is

---

2. Whether the Court of Special Appeals failed to review this case on its individual merits by placing too much reliance upon *Scott v. Hawit*, 211 Md. App. 620, 66 A.3d 60, *cert. denied*, 434 Md. 314, 75 A.3d 919 (2013), a decision with much different facts and erroneous trial rulings that did not occur in this case?
3. Whether the Court of Special Appeals erred by holding that the residence of foreign plaintiffs should not factor into the convenience of the parties' analysis under Rule 2-327(c)?

presumed to have performed his [or her] duties properly.") (internal citations omitted); *Alexis v. State*, 437 Md. 457, 478, 87 A.3d 1243, 1254 (2014) (citing *North v. North*, 102 Md. App. 1, 13–14, 648 A.2d 1025, 1031–32 (1994)); *Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 436, 914 A.2d 113, 132 (2007) ("So long as the Circuit Court applies the proper legal standards and reaches a reasonable conclusion based on the facts before it, an appellate court should not reverse a decision vested in the trial court's discretion merely because the appellate court reaches a different conclusion."); *see also Kern v. TXO Production Corp.*, 738 F.2d 968, 971 (8th Cir. 1984) ("The very concept of a discretion presupposes a zone of choice within which the trial court may go either way.").[2]

## IV.

### *Parties' Contentions*

Respondents argue that the Circuit Court abused its discretion when transferring the case from Baltimore City to Talbot County. The Kerrigans note that the burden of persuasion resided with the Petitioners in the trial court and that, based on the record of this case, the Circuit Court could not reasonably find that the balance strongly weighed in favor of transferring the case from Baltimore City to Talbot County. The Kerrigans point to several alleged tortious acts that occurred in Baltimore City as well as the three

---

[2] The amicus brief submitted by the Maryland Association for Justice suggests that the standard of review differs from how we have stated it here. The brief beckons this Court to ignore the words in its previous decisions and to read into the various decisions a raised level of review where the trial court receives less deference than what is afforded to it under an abuse of discretion standard. Never has this Court held that any other standard of review applies to Rule 2-327(c) motions to transfer. We see no good reason now to change the rule.

7

defendants and multiple treating physician-witnesses who would be inconvenienced by traveling from Baltimore City, where they work, to Talbot County. The Kerrigans further argue that the Circuit Court erred when it assessed the interests of justice by finding that Baltimore City's caseload was larger than Talbot County's, that Talbot County had a greater interest in the health care provided by Shore Medical than Baltimore City had in the care provided by the University of Maryland, and that the jury burden would be greater in Baltimore City than in Talbot County. According to the Kerrigans, the failure to properly weigh the arguments made by both sides warranted reversal by the Court of Special Appeals.

Petitioners, on the other hand, urge this Court to reverse the Court of Special Appeals, and point us to *Odenton* and *Urquhart* as holding that a trial court has discretion to make the determination to transfer the case. Petitioners suggest that in the present case, the hearing judge properly weighed the facts before him and that he, therefore, did not abuse his discretion in granting the motion to transfer. Petitioners invite us to clarify what they suggest was an incorrect reliance upon *Scott v. Hawitt*, 211 Md. App. 620, 66 A.3d 60 (2011), a case which they argue is factually different from the present case.

*History of Rule 2-327(c)*

Rule 2-327(c), provides:

> On motion of any party, the court may transfer any action to any other circuit court where the action might have been brought if the transfer is for the convenience of the parties and witnesses and serves the interests of justice.

The Maryland Rules Committee drafted Rule 2-327(c) in 1984 for our adoption, and, in doing so, relied on the language found in 28 U.S.C. § 1404(a). *Odenton*, 320 Md. at 40,

8

575 A.2d at 1238. Section 1404(a) of Title 28 of the United States Code states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[3] In light of the near-replication of the federal language, we held in *Odenton* that "federal law construing § 1404(a) is highly persuasive in our analysis." 320 Md. at 40, 575 A.2d at 1238; Paul V. Niemeyer, Linda M. Schuett, and Joyce E. Smithey, Maryland Rules Commentary 303 (4th ed. 2014) ("This section is derived from 28 U.S.C. § 1404(a) and is intended to incorporate the body of law construing that statute."); *see Stidham v. Morris*, 161 Md. App. 562, 568, 870 A.2d 1285, 1289 (2005) ("In fact, federal and Maryland law, on this point, can almost be viewed as one body of law.").

The federal statute, 28 U.S.C. § 1404(a), has its origins in the federal common law doctrine of *forum non conveniens*. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S. Ct. 252, 264, 70 L. Ed. 2d 419, 434 (1981). In *Piper Aircraft*, the United States Supreme Court acknowledged the intent of Congress to create a legislative analogue to the common law doctrine. Congress did not simply enshrine pre-existing common law into statutory form but rather revised the doctrine to "giv[e] more discretion to transfer under § 1404(a)

---

[3] Rule 2-327(c) differs from the federal rule in the plain language insofar as the Md. Rule includes "On motion of any party . . . ." The language of the two rules are otherwise "virtually identical." *Urquhart*, 339 Md. at 11, 660 A.2d at 417. The meaning of this variation in language was litigated in *Urquhart*, in which we determined that "on motion of any party" precludes the trial court from, *sua sponte*, transferring the case pursuant to Rule 2-327(c) and requires the parties to raise the issue in a motion to transfer (unlike federal trial courts which may decide, *sua sponte*, to transfer a case based on convenience). *Id.* at 11–12, 660 A.2d at 417.

9

than [courts] had to dismiss on grounds of *forum non conveniens*." *Id.* at 253, 102 S. Ct. at 265, 70 L. Ed. at 434; M. Moore, Federal Practice § 111.53 (Matthew Bender & Company, Inc., 2017) ("Recognizing that the 'broad venue provisions in federal [a]cts often resulted in inconvenient forums,' Congress intended Section 1404(a) to remedy this situation by authorizing easy transfer of actions to a more convenient federal forum.") (internal citations omitted). Congress sought to avoid the unnecessary and unjust consequences that could arise as a result of the application of the *forum non conveniens* doctrine by making transfers easier than dismissal on the same grounds. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75, S. Ct. 544, 546, 99 L. Ed. 789, 793 (1955) ("Congress, in writing § 1404(a), which was an entirely new section, was revising as well as codifying. The harshest result of the application of the old doctrine of *forum non conveniens*, dismissal of the action, was eliminated by the provision in § 1404 (a) for transfer. . . . [I]t can hardly be called mere codification."). Greater discretion given to trial courts by Congress went hand-in-hand with "intend[ing] to permit courts to grant transfers upon a lesser showing of inconvenience." *Id.* ("That is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader."). Congress's construction of 28 U.S.C. § 1404(a) relegated the common law doctrine to a limited set of circumstances involving a foreign forum. *American Dredging Co. v. Miller*, 510 U.S. 443, 449, 114 S. Ct. 981, 986, 127 L. Ed. 2d 285, 294 n.2 (1994). In *Johnson v. G.D. Searle & Co.*, we first recognized the distinction between the federal common law and the federal statutory provision. 314 Md. 521, 526–27, 552 A.2d 29, 31–32 (1989).

*Application of Maryland Rule 2-327 to this Case*

It is undisputed in this case that the Kerrigans could have brought suit in either Talbot County *or* Baltimore City.[4] "Rule 2-327(c) does not deal with a transfer for want of venue; it confers on a circuit court the discretionary power to transfer even if the transferring court is a proper venue." *Leung*, 354 Md. at 222, 729 A.2d at 959. The plaintiff chooses where to bring suit within the parameters set out by the Courts and Judicial Proceedings Article,[5] and the trial court must regard that choice with deference. *Id.* at 224, 729 A.2d at 959 (citing *Urquhart v. Simmons*, 339 Md. 1, 18, 660 A.2d 412, 420 n.7 (1995)). That deference shrinks, however, when the plaintiff does not reside in the forum where the plaintiff has chosen to file suit. *Leung*, 354 Md. at 228–29, 729 A.2d at 962. That deference diminishes further "if a plaintiff's choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter."[6] *Stidham*,

---

[4] That venue is appropriate in more than one Maryland trial court is a prerequisite to pleading for transfer under Rule 2-327(c). *See, e.g.*, Paul V. Niemeyer, Linda M. Schuett, and Joyce E. Smithey, Maryland Rules Commentary 303 (4th ed. 2014) ("The transferee court must be a court where the action could have been properly filed in the first instance.").

[5] *See, e.g.*, MD. CODE ANN., CTS. & JUD. PROC., §§ 6-201–203 (1973, 2013 Repl. Vol.).

[6] *Stidham* was not the first case in which Maryland appellate courts have used the "meaningful ties" analysis. In *Urquhart*, for example, we suggested that when "the only contact that Prince George's County had to the instant case was that Mr. Simmons died at . . . [a] [h]ospital . . . located in Prince George's County and [a defendant] had an office located in Prince George's County," the plaintiff's choice of venue had no meaningful ties to the controversy and no particular interest to the parties or subject matter. 339 Md. at 18–19, 660 A.2d at 420–21 (1995). In context, the hearing judge in the case at bar considered that the controversy contained meaningful ties to health institutions in both Talbot County and Baltimore City, and therefore did not alter the deference owed to the Kerrigans' choice of forum on that basis. *See Pacific Car*, 403 F.2d at 954 ("If the operative facts have not occurred within the forum of original selection and that forum has

11

161 Md. App. at 569, 870 A.2d at 1289–90 (citing *Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136, 142 (D.D.C. 2004)). A trial court, however, has wide discretion to weigh the "convenience of the parties and witnesses" and "interests of justice" on the facts of the case before it when assessing whether to transfer the case. *Odenton*, 320 Md. at 40, 575 A.2d at 1238 (citing *Stewart Organization Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22, 31 (1988)); *Leung*, 354 Md. at 224, 729 A.2d at 959. Only if the trial court fails to exercise, or abuses, its discretion will a reviewing court reverse the trial court's order to transfer venue. *Urquhart*, 339 Md. at 19, 660 A.2d at 421.

A. THE TRIAL COURT MUST GIVE DUE DEFERENCE TO THE PLAINTIFF'S CHOICE OF VENUE.

In relying on 28 U.S.C. § 1404(a) as a model for Rule 2-327(c), we adopted the general rule that plaintiffs receive the privilege of deference to their choice of forum. *Leung*, 354 Md. at 224, 729 A.2d at 960. The Rules Committee explicitly commented on the right of plaintiffs to choose the venue for their suit as well as the deference owed to that choice by trial courts. Paul V. Niemeyer, Linda M. Schuett, and Joyce E. Smithey, Maryland Rules Commentary 303 (4th ed. 2014) ("[D]ue consideration must be given to the plaintiff's selection of forum, and this selection will not be altered solely because it is more convenient for the moving party to be in another forum."). *Piper Aircraft*, a landmark decision in federal law on 28 U.S.C. § 1404(a), stated the proposition that "ordinarily a strong presumption in favor of the plaintiff's choice of forum" exists. 454 U.S. at 255, 102

---

no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration.").

S. Ct. at 265–66, 70 L. Ed. 2d at 435; *Leung*, 354 Md. at 224, 729 A.2d at 959–60. *Piper Aircraft* explained that "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."[7] *454* U.S. at 255–56, 102 S. Ct. at 266, 70 L. Ed. 2d at 436; *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184, 1191, 167 L. Ed. 2d 15, 25 (2007).

B. THE PLAINTIFF'S CHOICE OF VENUE IS NOT AN ABSOLUTE PRIVILEGE.

Although the plaintiff's chosen venue is the presumed convenient forum for the plaintiff, and, as such, is granted deference, that deference is by no means guaranteed as an absolute. *Leung*, 354 Md. at 225, 729 A.2d at 960 ("The plaintiff's choice, however, is not an absolute and uncontrolled privilege that is determinative under present *forum non conveniens* law."); *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("Plaintiff's choice of forum, then, is not the final word."). Not only is the privilege not absolute, but the deference owed to the plaintiff may face significant diminishment to the point of non-existence, depending on the circumstance. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2nd Cir. 2001) ("[T]he degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale . . . .").

---

[7] The Dissenting Opinion mischaracterizes our reference to *Piper Aircraft* as a reliance on that case. This Court has repeatedly and consistently referred to *Piper Aircraft* for its general exposition of the law, not its facts. Here, we only cite to *Piper Aircraft* to show the history and development of the principles of our law over time.

Our case law interpreting Rule 2-327(c) has acknowledged the significance of the plaintiff's residence when that residence is not the same place as the chosen forum. *Leung* first explicitly incorporated the federal rule that a "'plaintiff's choice of venue . . . has minimal value . . . where the plaintiff is not a resident of the judicial district in which he [or she] has instituted suit.'" *Id.* at 228, 729 A.2d at 962 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256, 102 S. Ct. 252, 266, 70 L. Ed. 2d 419, 436 (1981)). In *Leung*, we noted that the fact that the plaintiff failed to reside in the forum in which suit was brought "los[t] its force [because] not only were the plaintiffs not residents of the venue of their choice, but the defendants' choice of venue was not the venue in which they resided. Nor is the plaintiff a resident of the venue sought by the defendants . . . ."[8] *Id.* at 229, 729 A.2d at 962. As we explained there, the deference owed to the plaintiff was not meant to be fixed but varied depending on the facts before the trial court. *Id.*

Prior to *Leung*, we had implicitly acknowledged this principle of diminished deference when interpreting Rule 2-327(c). For example, in *Odenton*, we affirmed the trial court's transfer of the case to Anne Arundel County, where the plaintiff resided. 320 Md. at 41, 575 A.2d 1238–39. Similarly, in *Urquhart*, without expressly recognizing the principle of diminished deference, we affirmed the trial court's exercise of its discretion in considering that the plaintiffs did not live in the venue where they filed suit. 339 Md. at

---

[8] The Dissenting Opinion relegates the section of *Leung* where we assessed the residence of the plaintiffs and defendants to "dicta." In doing so, the Dissenting Opinion abbreviates the Court's analysis to exclude how the convenience of the parties did not militate in favor of transfer, a necessary determination for the Court to make based on the legal standard set forth in Rule 2-327(c).

18-19, 660 A.2d at 420–21. Furthermore, in that case, we commented that the only contact the plaintiffs had with the chosen forum was that the subject of the suit, Mr. Simmons, had died at a hospital in that venue. 339 Md. at 18–19, 660 A.2d at 420–21.

In *Stidham*, the Court of Special Appeals cited to *Leung* as standing for the proposition that the trial court accords the plaintiff's choice of forum less deference when the plaintiff does not reside in that forum. 161 Md. App. at 569, 870 A.2d at 1289. According to the intermediate appellate court in *Stidham*, not only did the trial court properly transfer the case, the trial court properly weighed the plaintiff's choice of venue in light of the fact that the plaintiff did not reside in that forum and additionally, that the plaintiff resided in the forum in which the defendants sought transfer. *Id.* at 569, 870 A.2d at 1290. In *Thompson v. State Farm Mut. Auto Ins. Co.,* the Court of Special Appeals affirmed the trial court's transfer of forum, and held that the trial court properly "discounted" the deference owed to the plaintiff's choice "by the fact that she does not live there." 196 Md. App. 235, 254, 9 A.3d 112, 122 (2010).

In addition to the plaintiff's residence as a factor to lessen the deference given to the plaintiff's choice of venue, the *Stidham* court applied the "meaningful ties" factor to further lessen the deference afforded to the plaintiff's choice of forum. In *Stidham*, the defendants struck the plaintiff's car in Baltimore County, the residence of the plaintiff. 161 Md. App. at 565–66, 870 A.2d at 1287–88. The plaintiff brought his action in Prince George's County, an undisputed appropriate venue in light of the fact that the defendants lived in Pennsylvania. *Id.* at 569, 870 A.2d at 1290. The *Stidham* court held that because meaningful ties to the controversy connected the action to Baltimore County as the situs of

15

the accident, the meaningful ties consideration militated in favor of transferring the action to Baltimore County instead of retaining the action in Prince George's County. *Id.* The *Stidham* court gave no sequential importance to evaluating whether the plaintiff lived in the forum in which the plaintiff sued or whether meaningful ties existed between the controversy and the chosen forum. *Id.* ("We therefore conclude that, because appellant is a resident of the transferee jurisdiction, Baltimore County, his choice of Prince George's County, which 'has no meaningful ties to the controversy and no particular interest in the parties or subject matter,' is entitled to little deference and thus little weight when the factors for and against transfer are weighed."). We note that, when correctly applied, "meaningful ties" is a factor, like the plaintiff's residence in the chosen forum, which can minimize the deference afforded to the plaintiff's choice of forum.

Appellate courts in this state have reversed the trial court's decision to transfer the case to another forum in three relevant but factually different cases from the case at bar, *Leung*, *Nodeen*, and *Scott*. First, *Leung* involved a motor vehicle tort action in which neither the three plaintiffs nor the five defendants lived in Maryland. 354 Md. at 220, 729 A.2d at 957. The Leungs filed suit in Baltimore City, and one defendant filed a motion to transfer venue to Howard County. *Id.* The defendant supported her motion by attaching a copy of the motor vehicle accident report issued by a Maryland State Trooper, which indicated that the accident had occurred in Howard County. *Id.* at 220–21, 729 A.2d at 958. The trial court granted the motion to transfer without affording the parties a hearing. *Id.* at 221, 729 A.2d at 958. Upon review, we surmised that the only factor weighing in favor of transfer was the situs of the accident, Howard County, and therefore, the location where

16

the accident occurred alone was not a strong basis for transferring the case. *Id*. at 224, 729 A.2d at 959. We reversed, concluding that the Circuit Court abused its discretion by granting the transfer, because "at best, the balancing factors produce[d] an equipoise, so that the plaintiffs' choice of forum controls." *Id*. at 229, 729 A.2d at 962. Notably, the present case before us is different from *Leung* because the defendants in *Leung* sought to transfer to a venue where neither the plaintiff nor the defendant resided. Here, unlike the case of *Leung*, the defendants sought to transfer the case to a venue where the plaintiffs reside.

In *Nodeen*, we reviewed a Circuit Court's order, which also granted the transfer without a hearing. 408 Md. at 174, 968 A.2d at 1079. *Nodeen* involved a motion to modify a custody order pending in the plaintiff's choice of forum, a different forum than where the custody order originated. *Id*. at 174, 968 A.2d at 1082–83. The defendants did not live in Maryland, and we determined that the Court of Special Appeals failed to properly analyze that either of two venues was appropriate, which is the critical step before analyzing the application of Rule 2-327(c). *Id*. at 179–80, 968 A.2d at 1082–83. There, we held that no reasonable trial judge could have set aside the deference owed to the plaintiff's choice of forum in light of the particular facts of the case, including that the plaintiff resided in the forum selected for suit. *Id*. at 181, 968 A.2d at 1083–84. Without the benefit of the trial court's rationale for transfer, we reasoned that the evidence presented did not support the conclusion to transfer the case from Calvert County to Anne Arundel County. Unlike in *Nodeen*, the hearing judge here provided a basis for the conclusion that the balancing of convenience and justice weighed strongly in favor of transfer.

17

Respondents rely upon the decision of the Court of Special Appeals in *Scott v. Hawit*, 211 Md. App. 620, 66 A.3d 60, to argue that the intermediate appellate court properly reversed the trial court in the present case. *Scott* involved a medical malpractice claim in which the plaintiffs alleged that a doctor in Calvert County, Dr. Raja I. Hawit, and a medical institution in Baltimore City, Johns Hopkins Hospital, were separately negligent in acts or omissions with regard to the post-delivery care rendered to the plaintiff's son. *Id.* at 623. Ms. Scott filed suit in Baltimore City, and, upon defendants' motion, the Circuit Court transferred the case to Calvert County. *Id*. at 623–26, 66 A.3d at 62–64. When assessing the convenience of the parties in *Scott*, the Court of Special Appeals noted the atypical nature of the case insofar as the plaintiff alleged negligence "on the part of two defendants, who are independent of each other, based on their separate, allegedly negligent conduct, taking place at different times but causing a single harm." *Id.* at 630, 66 A.3d at 66. The Court of Special Appeals reversed the trial court's grant of the motion to transfer to Calvert County, holding that the trial court improperly focused on irrelevant factors, such as the situs where the child's injuries originated as opposed to the location of the tortious conduct, the perceived apportionment of liability between the defendants, and for treating Johns Hopkins as a resident of Calvert County and not Baltimore City. *Id.* at 634, 66 A.3d at 69–71. Unlike in *Scott*, the hearing judge in the case at bar did not abuse his discretion by considering irrelevant factors.

C. THE DEFERENCE OWED TO THE PLAINTIFF'S CHOICE OF FORUM IS CALIBRATED IN THE BURDEN OF PERSUASION.

When the trial court assesses whether to transfer a case pursuant to Rule 2-327(c), the court may only transfer the case if the moving party demonstrates that the balance of the convenience along with the interests of justice weighs strongly in favor of transfer. *Odenton*, 320 Md. at 40, 575 A.2d at 1238 (citing *Akers v. Norfolk and Western Railway Company*, 378 F.2d 78, 80 (4th Cir. 1967)); Paul V. Niemeyer, Linda M. Schuett, and Joyce E. Smithey, Maryland Rules Commentary 303 (4th ed. 2014) ("The burden is on the moving party to show that justice is best served by the transfer, and a transfer should occur only when the balance weighs strongly in favor of the moving party."). In both *Urquhart* and *Leung*, we explained that we adopted that particular language — that the balance weighs *strongly* in favor of transfer — in order to afford the appropriate deference to the plaintiff's desired forum. *Leung*, 354 Md. at 224, 729 A.2d at 959 ("Proper regard for the plaintiff's choice of forum is the reason why 'a motion to transfer from the forum chosen by the plaintiff should be granted only when the balance weighs strongly in favor of the moving party.'") (citing *Urquhart v. Simmons*, 339 Md. 1, 18, 660 A.2d 412, 420 n.7 (1995)). The burden falls on the moving party to demonstrate that the balance strongly points toward transfer.[9] *Id.* When balancing the factors amounts to equipoise, or a tie, then the plaintiff's choice of forum should remain undisturbed. *Leung*, 354 Md. at 229, 729

---

[9] That the moving party is most typically the defendant(s) does not preclude a plaintiff from seeking transfer under Rule 2-327(c). *See* Paul V. Niemeyer, Linda M. Schuett, and Joyce E. Smithey, Maryland Rules Commentary 303 (4th ed. 2014) ("Under section (c) of this rule, any party to an action may file a motion to transfer the action to another court having venue for the convenience of the parties and the witnesses.").

A.2d at 962; *Nodeen v. Sigurdsson*, 408 Md. 167, 181, 968 A.2d 1075, 1083 (2009); *see also Smith v. Johns Hopkins Cmty. Physicians, Inc.*, 209 Md. App. at 413, 59 A.3d at 1074 ("[T]he proponent of the transfer of venue, bearing the burden of proof, thereby loses the evidentiary tie.").

Given the fact-laden nature of this balancing test, trial court decisions are necessarily "individualized" and made on a "case-by-case" basis. *Stewart Organization Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22, 31 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 812, 11 L. Ed. 2d 945, 953 (1964)). As we stated in *Leung*, "The discretionary decision by a trial court on whether to transfer an action, and appellate review of that exercise of discretion, are predominantly fact driven. Very few generalizations can be made in this area of the law." 354 Md. at 226, 729 A.2d at 961. We recognize that because trial courts have discretion to weigh the facts of each case, "uniformity and predictability of outcome" are "almost impossible." *American Dredging Co.*, 510 U.S. at 455, 114 S. Ct. at 989, 127 L. Ed. 2d at 298. We cannot, therefore, generalize Rule 2-327(c) transfer cases because one case's facts do not fit neatly into the next.

Given the fact-intensive nature of Rule 2-327(c) transfer inquiries, appellate courts are limited in their review to the facts before them. Thus, appellate courts understandably confront a puzzle when reviewing transfer cases. On the one hand, an appellate court must give wide latitude to a trial court's evaluation and, thus, to the balance of the various factors it considered prior to making a final determination about whether to transfer the case. On the other hand, appellate review calls for a reviewing court to determine if the trial court

abused its discretion when balancing convenience and the interests of justice. The appellate court must do so without imposing on the province of the trial court. As a result, appellate courts must resolve the tension between their own standard of review and the moving party's burden of persuasion at the trial level.

Judge Charles E. Moylan, Jr., in *Payton-Henderson v. Evans*, observed this tension, and emphasized that the burden of persuasion "being a heavy one is a guideline for the trial judge and not a standard of appellate review." 180 Md. App. 267, 287, 949 A.2d 654, 665. Appellate courts would do well to remember that just because they "may not have chosen to transfer" the case does not mean that the trial court abused its discretion in doing so, assuming the trial court had sufficient facts to support its order to transfer. *Urquhart*, 339 Md. at 19, 660 A.2d at 421 (holding that, although the Court may not have chosen to transfer the case from Prince George's County to Montgomery County, the trial court was within its discretion to do so). The trial court must have acted unreasonably based on the facts before it for an appellate court to reverse under an abuse of discretion standard. *North v. North*, 102 Md. App. 1, 14, 648 A.2d 1025, 1032 (1994) ("The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable."). Appellate courts must, therefore, judiciously approach reviews of Rule 2-327(c) transfers so as not to foist onto themselves the task designed for, and better left to, the trial courts.

21

D. THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION IN FINDING THAT THE BALANCE OF THE CONVENIENCE OF THE PARTIES AND WITNESSES AND INTERESTS OF JUSTICE WEIGHED IN FAVOR OF TRANSFER.

Even though the few decisions in Maryland interpreting Rule 2-327(c) seemingly turn on the residence of the plaintiff, this Court has relied upon a number of factors that hearing judges should consider when determining the convenience of the parties. Plaintiffs received due deference from their choice of venue when they reside in the forum. *Odenton*, 320 Md. at 41, 575 A.2d at 1238–39; *Urquhart*, 339 Md. 1, 19, 660 A.2d 412, 421; *Leung*, 354 Md. at 228, 729 A.2d at 959–60; *Nodeen*, 408 Md. at 180–81, 968 A.2d 1075, 1083–84. Defendants received due deference from their proposed choice of venue when defendants resided in that forum. *Urquhart*, 339 Md. at 18–19, 660 A.2d at 420; *Leung*, 354 Md. at 228–29, 729 A.2d at 962; *Nodeen*, 408 Md. 167, 181, 968 A.2d 1075, 1083. A trial court properly considered the location where the cause of action arose as a factor. *Odenton*, 320 Md. at 41, 575 A.2d at 1238–39; *Urquhart*, 339 Md. at 18–19, 660 A.2d at 420–21. We have assessed the relative convenience of haling defendants or plaintiffs into the others' choice of venue based on residence or where they carry on business. *Odenton*, 320 Md. at 41, 575 A.2d at 1238–39; *Urquhart*, 339 Md. at 19, 660 A.2d at 420–21; *Leung*, 354 Md. at 228–29, 729 A.2d at 962; *Nodeen*, 408 Md. at 181, 968 A.2d at 1083. We commented on the convenience of the witnesses as a factor for the trial court to consider. *Odenton*, 320 Md. at 41, 575 A.2d at 1238–39; *Leung*, 354 Md. at 228, 729 A.2d at 962; *Nodeen*, 408 Md. at 181, 968 A.2d at 1083. Lastly, we have considered the ease of access to sources of proof. *Nodeen*, 408 Md. at 181, 968 A.2d at 1083. We have previously commented about these factors and, although not intended as an exhaustive or exclusive

22

list of concerns for trial judges, these factors operate as a guide for judges when they engage in a convenience analysis. Trial judges have the discretion to weigh the factors as they deem appropriate in light of the circumstances of the cases before them.

Thus, we review the facts of the case before us. We determine that the hearing judge gave some weight to the plaintiffs' venue choice by properly recognizing the moving party's burden of persuasion. The hearing judge stated that this was a "motion under the *forum non conveniens* analysis" and that it had to determine "whether the factors balance heavily in favor of transfer to the suggested jurisdiction of Talbot County." Next, when considering the convenience factor, the hearing judge looked at the convenience of *all* parties[10] — in this case ten parties, the three plaintiffs and seven defendants — and correctly found that the majority of the parties would be convenienced by the transfer. The hearing court accurately determined that "seven of the ten named parties in the case, plaintiff and defendants, are in Talbot County." The hearing judge noted that he "was struck by the fact . . . that [the] plaintiffs actually must pass the Circuit Court for Talbot County on the way to the Circuit Court for Baltimore City." At the end of the hearing judge's order to transfer, he reasoned that "[I] see many motions to transfer, noting that [the] plaintiff is afforded deference with respect to choice of venue. And in many cases . . . the factors would not weigh strongly . . . . But in this case, I see this as, far and away,

---

[10] The Dissenting Opinion weighs the convenience of the parties without consideration of the plaintiffs in the convenience analysis. We have not previously weighed the convenience of the parties using the method the Dissenting Opinion suggests, nor have we previously considered the factors the dissent prioritizes as legally significant. The Dissenting Opinion's reference to a footnote in *Urquhart* is simply a discussion of the burden of persuasion, not an explanation of how to conduct a convenience analysis.

23

one of the strongest in terms of weighing in favor of transfer to Talbot County." Accordingly, it is not our place as the reviewing court to second-guess the weighing of the evidence by the Circuit Court.[11] *See Smith*, 209 Md. App. at 415, 59 A.3d at 1074; *Payton-Henderson*, 180 Md. App. at 287, 949 A.2d at 665.

We disagree with the Court of Special Appeals' reasoning when the Court of Special Appeals conflated the deference owed to the Kerrigans with the balancing of the convenience of the parties. The intermediate appellate court concluded that the residency of the Kerrigans should not have factored into the overall convenience analysis if the hearing judge gave the Kerrigans due deference to their choice of venue. The Court of Special Appeals erred when it set aside consideration of the plaintiffs' convenience (or inconvenience). Without providing any legal support, the intermediate appellate court calculated only the convenience to the seven defendants by weighing four defendants from Talbot County and three defendants from Baltimore City rather than all *ten* parties, which would have included the plaintiffs. Rule 2-327(c) analysis calls for trial judges to weigh the convenience of the parties. Moreover, we have previously adopted deference to the plaintiff's choice of venue as an additional factor to weigh, separate from the convenience of the parties, in the overall balancing. *See Urquhart*, 339 Md. at 18, 660 A.2d at 420 n.7

---

[11] The Dissenting Opinion argues that the Kerrigans have a "significant connection" to Baltimore City and that the Kerrigans "made dozens of trips into Baltimore City," findings not made by the hearing judge. Additionally, the Dissenting Opinion characterizes these connections as "far more tangible" than connections in *Odenton* or *Urquhart*, a distinction without a difference given that how tangible a connection is has never before been recognized by this Court as legally relevant.

24

("We note that the Court of Special Appeals adopted from federal case law the additional factor of 'proper regard for the plaintiff's choice of forum . . . .'"); *see also Stidham*, 161 Md. App. at 571, 870 A.2d at 1291 (weighing the geographical convenience of both the plaintiff and the defendants); *cf. Scott*, 211 Md. App. at 636–37, 66 A.3d at 70–71 (explaining that despite the plaintiff receiving deference, the plaintiff's residence is still considered in the convenience analysis); *cf. Sousa v. TD Banknorth Ins. Agency, Inc.*, 429 F. Supp. 2d 454, 457 (D. NH. 2006) (acknowledging that although the plaintiff receives deference for filing suit in his or her home forum, the geographical convenience of the plaintiff is still balanced against the geographical convenience of the defendant).

When weighing the convenience of the witnesses, the hearing judge admitted that "it's hard to say who will actually testify," but he acknowledged that he had considered a list of over five hundred potential witnesses offered by the Kerrigans. The hearing judge then determined that the "primary and key witnesses" who would be inconvenienced were located in Talbot County. Additionally, the hearing judge weighed the relative convenience of the doctors on the transplant team that had treated Brandon, all of whom worked in Baltimore City, against the convenience of Brandon's coaches and teammates who lived in Talbot County. We cannot say that the hearing judge's finding that "the significant balance is in favor of those who would be inconvenienced significantly coming from Talbot County to Baltimore City" was unreasonable.

The Kerrigans split hairs over the words used by the hearing judge in his convenience weighing. The Kerrigans argue that the judge placed no weight on the transplant team in considering the convenience of the witnesses. Even a cursory review of

25

the record suggests otherwise. The hearing judge, in fact, stated: "I was unpersuaded by the exhibit and statistics presented by plaintiffs' counsel as to the witnesses. I don't find the fact that the transplant team is in Baltimore City is of significance." That the judge found the argument advanced by the Kerrigans regarding the transplant team less compelling than the argument advanced by the University of Maryland regarding the teammates and coaches of Brandon was not unreasonable.[12]

When a trial court considers the interests of justice, the court accounts for overall "systemic integrity and fairness" in transferring or retaining the case by assessing the public and private interests. *Odenton*, 320 Md. at 40, 575 A.2d at 1238; *Johnson*, 314 Md. at 526, 552 A.2d at 31. The private interests are not at issue in the case *sub judice* as the hearing judge held those factors did not tip toward one side or the other. The factors to which hearing judges look to determine the public interest include court congestion, the jury duty burden, and keeping localized concerns decided in their place of origin. *Johnson*, 314 Md. at 526, 552 A.2d at 31. Yet, these factors are not intended to be an exhaustive list. *Id.*

The hearing judge reasonably found that the public interest of justice weighed in favor of transfer. Based on the record of the motion hearing, we have insufficient facts to determine which side correctly determined the caseload and relative congestion. The Kerrigans claim that no data was submitted to the hearing judge to make the determination

---

[12] An additional argument raised by the Kerrigans is that the hearing judge allowed the defendants who work in Baltimore City to waive their inconvenience. This assertion is baseless, given the judge's findings that seven out of ten of the named parties lived in Talbot County. Had the judge allowed the members of the transplant team to waive their inconvenience, as the Kerrigans suggest, then the judge would have concluded that the seven remaining named parties resided in Talbot County.

26

that the jury burden weighed in favor of transfer. We disagree based on the hearing judge's reference to and use of the "Maryland Judiciary Annual Statistical Abstract for Fiscal Year 2014," which was included as an exhibit in both parties' filings and referenced on the record by both sides during the hearing. The hearing judge determined that the burden was heavier in Baltimore City as compared to Talbot County based on the number of trials recorded as having taken place and the numbers submitted in the Statistical Abstract. Lastly, as the public interest is an overarching concept regarding systemic integrity and fairness, we determine that the hearing judge acted reasonably in considering the public's interest in the health care provided to its communities. When considering the facts before him, the hearing judge found the arguments advanced by the University of Maryland and the other defendants more persuasive. We cannot say that the hearing judge abused his discretion in finding that both the convenience of the parties and witnesses as well as the interests of justice weighed strongly in favor of transfer.[13]

---

[13] The Dissenting Opinion repeatedly emphasizes that the balance does not weigh strongly in favor of transfer, yet concedes that both the public interest and convenience of the parties and witnesses weigh in favor of transfer. The Dissenting Opinion muddles the burden of persuasion, that the evidence weighs strongly in favor of transfer, with the standard of review, abuse of discretion, and in so doing, chooses to substitute its judgment for that of the hearing judge and engages in precisely the process we have cautioned against. By applying a *de novo* standard of review to the hearing judge's decision, the Dissenting Opinion sidesteps the abuse of discretion standard in order to reach its preferred outcome for the case. The endpoint of the Dissenting Opinion's rationale makes the Rule 2-327(c) burden of persuasion an insurmountable hurdle for the moving party, and if adopted, would reverse decades of jurisprudence by this Court and the Court of Special Appeals.

## V.

Upon our review of the Circuit Court's order to transfer the Kerrigan's case from Baltimore City to Talbot County, we determine that the hearing judge did not abuse his discretion in balancing the convenience of the parties and interests of justice and finding that the weight of the evidence strongly favored transfer. We recognize that less weight is given to the plaintiff's choice of venue when the plaintiff does not reside in that forum, and that choice, likewise, is given minimal weight when the forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter. The facts of each case will dictate whether the plaintiff's choice of venue will control the choice of forum. The intermediate appellate court erred in reversing the hearing judge's order to transfer the case to Talbot County.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT TO BE PAID BY RESPONDENTS.**

Circuit Court for Baltimore City
Case No.: 24-C-15-002333
Argued: September 6, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 3

September Term, 2017

UNIVERSITY OF MARYLAND MEDICAL
SYSTEM CORPORATION *et al.*

v.

BRANDON KERRIGAN, a minor *et al*.

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Dissenting Opinion by Adkins, J., which
Barbera, C.J. and McDonald, J., join.

Filed: November 28, 2017

The Majority's holding today has undermined the long-held recognition of a plaintiff's right to choose a venue. Maryland Rule 2-327(c) permits transfer of an action from one circuit court to another if the transfer "is for the convenience of the parties and witnesses and serves the interests of justice." Cases from this Court considering the propriety of a change in venue have required that convenience and justice must **strongly** favor transfer. *Leung v. Nunes*, 354 Md. 217, 224 (1999). Most respectfully, I dissent because I cannot conclude that the convenience of the parties and witnesses, or the interests of justice strongly favor transfer of Kerrigan's suit. I would affirm the Court of Special Appeals' holding that the trial court abused its discretion by transferring the case from Baltimore City to Talbot County.

### Deference to a Plaintiff's Choice of Venue

I do not agree that a plaintiff's choice of venue deserves any less deference when plaintiffs choose to sue in a county where they do not live. The Majority cites *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981), for the proposition that, in a *forum non conveniens* analysis, a foreign plaintiff's choice of venue deserves less deference than a plaintiff suing in his or her home court. The facts of *Piper*, not included in the Majority's opinion, differ greatly from the facts in the present appeal. *Piper* involved a plane crash in Scotland. *Id.* at 238–39. Five passengers and the pilot perished in the crash. All of decedents were Scottish subjects as were their heirs and next of kin. The personal representative of the decedents' collective estates, a California resident, sued Piper Aircraft and a propeller manufacturer in the United States. *Id.* at 239–40. On these facts, the

Supreme Court determined that the district court properly dismissed on *forum non conveniens* grounds and concluded that the case should be tried in Scotland. *Id.* at 238.

Surely, *Piper* differs from this appeal. First, the Supreme Court held the action was properly dismissed. The Court concluded that the plaintiffs could not bring their case anywhere in the United States. *Id.* at 261. Here, the parties do not dispute whether Kerrigan can bring suit in Baltimore City. Furthermore, whereas all the *Piper* plaintiffs lived in Scotland and the suit had only minor ties to the United States, all the Baltimore defendants' allegedly negligent conduct occurred in Baltimore and most, if not all, of Kerrigan's damages witnesses are in Baltimore. For these reasons, I cannot agree that *Piper* applies to Kerrigan's appeal.[1]

This Court in *Leung,* in dicta, noted *Piper* merely for the principle of attributing less deference to a foreign plaintiff's choice of venue. 354 Md. at 228–29. The Majority relies on *Leung*'s citation to *Piper* to diminish Kerrigan's choice of venue. But in *Leung*, this Court **reversed** a trial court's transfer on *forum non conveniens* grounds and allowed the plaintiffs to choose a venue. *Id.* at 229. The plaintiffs in *Leung* were New Jersey residents passing through Maryland on Interstate 95. *Id.* at 220. While on a portion of I-95 in Howard County, the plaintiffs were injured in a crash. Several vehicles were involved in the wreck. The plaintiffs sued five defendants. Both of the individual defendants lived out

---

[1] The Supreme Court used the term "foreign" to describe plaintiffs entirely outside the United States. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). Commentators discussing federal law have analyzed *Piper* as if it applies only to actions from plaintiffs outside the United States. *See* Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 3828.2 (4th ed. 2009). We should not apply *Piper* to a dispute between parties merely from different subdivisions in the same state.

of state. Of the three corporate defendants, only two had registered agents in Maryland—one in Prince George's County and another in Baltimore. *Id.* The plaintiffs filed their suit in the Circuit Court for Baltimore City but the defendants moved to transfer venue to Howard County. *Id.* at 221. The trial court granted the motion and transferred the case to Howard County. *Id.* Even though the accident occurred in Howard County and only one defendant had a registered agent in Baltimore City, we reversed the transfer. *Id.* at 229. The Court specifically rejected the defendants' argument that *Piper*'s less deferential standard should have permitted the transfer. *Id.* at 228.

Because we have not adopted a less deferential standard for "foreign" plaintiffs, we should apply our normal Rule 2-327(c) standard: that the plaintiffs may choose their venue unless the convenience of the parties and witnesses or the interests of justice strongly favor transfer. Under this test, I would hold the trial judge abused his discretion by concluding that both convenience and the interests of justice weighed **strongly** in favor of transfer.[2]

---

[2] The Majority also notes that the Court of Special Appeals, in *Stidham v. Morris*, 161 Md. App. 562 (2005), properly invoked the less deferential standard mentioned in *Leung*. But in *Stidham* too, the facts differed greatly from Kerrigan's appeal.

*Stidham* involved a car accident in Baltimore County. *Id.* at 565–66. The plaintiff also lived in Baltimore County. The plaintiff sued out-of-state defendants in Prince George's County and the defendants moved to transfer the case to Baltimore County. *Id.* After noting that the plaintiff and the suit had "virtually no connection" to Prince George's County, the intermediate appellate court affirmed the trial court's transfer. *Id.* at 565, 569–70. Again, Kerrigan's suit has a much greater connection to his chosen venue given the extensive, and allegedly negligent, medical care he received in Baltimore City.

3

**Convenience**

A trial court's convenience analysis should focus on the convenience of both the witnesses and the parties. But mere added convenience cannot compel a transfer. Commentators have noted, and we have recognized, that trial courts must give due deference to a plaintiff's selection of venue and that selection should not be disturbed merely because it is more convenient for a moving party to be in another court. *See Leung*, 354 Md. at 225 (citing Paul V. Niemeyer, Linda M. Schuett & Joyce E. Smithey, *Maryland Rules Commentary* 303 (4th ed. 2014)).

I do not agree that the convenience of the parties and witnesses **strongly** favors transfer to Talbot County.

In *Odenton Dev. Co. v. Lamy*, 320 Md. 33, 41–42 (1990), this Court approved a transfer against the plaintiff's wishes due to limited connection with the chosen venue. The plaintiff, an Anne Arundel County resident, slipped and fell while traversing a snow covered-sidewalk outside of a grocery store in Anne Arundel County. *Id.* at 36. She brought suit in Baltimore City against the property owner, Odenton Development Co., which had a registered agent in Baltimore. *Id.* at 37. The Court concluded that the trial court properly transferred the case from Baltimore City to Anne Arundel County. Convenience strongly weighed in favor of transfer to Anne Arundel County because the accident occurred there and it was reasonable to assume that all of the witnesses either lived or worked in Anne Arundel County. *Id.* at 41.

In *Urquhart v. Simmons*, 339 Md. 1, 18–19 (1995), we rejected a plaintiff's choice of venue and approved a transfer on convenience grounds. The plaintiff sued in Prince

4

George's County despite the suit's scant connections to that county. *Id.* at 3–5. Though the plaintiff's decedent died in Prince George's County and the defendants maintained offices there, all of the allegedly negligent conduct occurred in Montgomery County. *Id.* at 1–4. We approved the transfer to Montgomery County on convenience grounds because "each of the individual defendants was a resident of Montgomery County. . . . [and] the relevant medical care and treatment received by [the decedent] took place in Montgomery County." *Id.* at 18. In *Urquhart*, the Court never relied on or even mentioned *Piper*'s principle that a plaintiff's choice receives less deference when suing in a "foreign" venue. Perhaps the Court recognized that the unique factual background of *Piper* rendered it inapplicable when parties dispute merely which Maryland circuit court should hear a case.

Kerrigan has a significant connection with his chosen forum. Two of the allegedly negligent doctors work in Baltimore, Kerrigan's entire heart transplant team works in Baltimore, and several medical professionals treated him in Baltimore during his many months in recovery. During his treatment and recovery, Kerrigan and his family made dozens of trips into Baltimore City. These connections are far more tangible than either the *Odenton* plaintiff—who only sued in Baltimore City because a defendant's resident agent was present there—or the *Urquhart* plaintiff—who sued in Prince George's County despite the fact that the decedent never received any allegedly negligent medical treatment in that county.

Furthermore, the trial court did not properly weigh the convenience of the parties because it used Kerrigan's residence as a factor against his choice of venue. Relying on *Odenton*, we stated in *Urquhart* that the plaintiff's choice of forum is not a "factor" for

consideration in a *forum non conveniens* analysis. Rather, the plaintiff's right to choose a forum is the reason why a trial court should transfer only when "the balance weighs strongly in favor of the moving party." *Urquhart*, 339 Md. at 18 n.7 (quoting *Odenton*, 320 Md. at 40). When plaintiffs select a venue, they presumably make determinations of convenience for themselves. A trial court should not ignore the plaintiff's choice when weighing convenience. Three defendants in this case hail from Baltimore City. Yet the trial court took no issue with these same Baltimore defendants moving to transfer the case out of their home locale. We ought to look skeptically upon a trial court's decision to use a plaintiff's residence against him while not weighing the movant's desire to transfer in the same manner.

### Interests of Justice

Maryland Rule 2-327(c) requires that **both** the convenience of the parties and witnesses and the interest of justice favor transfer. Because I would find that a weighing of the convenience of the parties and witnesses does not strongly favor transfer, I could end my dissent. I continue to write separately because the trial court further erred by concluding that the "interests of justice" strongly favored transfer.

This Court has outlined relevant factors to consider in an "interest of justice" analysis. *See Johnson v. G.D. Searle & Co.*, 314 Md. 521, 525–26 (1989). The interests of justice can be divided into private interests and public interests. *Id.* Private interest factors include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of

6

> view of premises, if view would be appropriate to the action;
> and all other practical problems that make trial of a case easy,
> expeditious and inexpensive.

*Stidham v. Morris*, 161 Md. App. 562, 568 (2005) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), *superseded by statute on other grounds*, 28 U.S.C. § 1404 (2012) *as recognized in Johnson v. G.D. Searle & Co.*, 314 Md. 521, 526–27 (1989)).

Here, the trial court concluded that the private interest factors did not weigh in favor of trial in **either** Baltimore City or Talbot County. I agree. Much of the evidence relevant to the alleged negligence exists both in Baltimore City and Talbot County. Many of the proffered witnesses also live or work in both places. Given that evidence and witnesses are in both locations, it seems very likely that trial in either venue would demand the same time and costs from the parties.

Our interest of justice inquiry also requires consideration of public interests. These interests include "among other things, considerations of court congestion, the burdens of jury duty, and local interest in the matter." *Id.* at 569 (citing *Johnson*, 314 Md. at 526). Regarding court congestion and the burdens of jury duty in each venue, I agree with the Majority and cannot conclude that the trial court erred in determining that these factors favored transfer.

The Majority also approves of the trial court's conclusion that Talbot County has a greater local interest in Kerrigan's suit. The Majority explains only that the trial court found the defendants' argument more persuasive on this point. Further inspection of the trial court's reasoning leads me to disagree. The trial court explained that:

7

> I was persuaded by the defense argument noting that the sole institution in Talbot County providing medical care is a party defendant in the case. So compare that to Baltimore City where there are several large medical institutions. The Court does find that there is a significantly stronger interest in Talbot County in the handling of this matter, the outcome of this matter than in Baltimore City.

The trial court concluded that, merely because Talbot County has only one hospital, the citizens of Talbot County have a greater interest in deciding Kerrigan's case. The Majority determined that "the hearing judge acted reasonably in considering the public's interest in the health care provided to its communities." Maj. Slip. Op. at 27. I struggle to find a line of reasoning to support this conclusion.

Maryland courts have only briefly discussed the "locality" factor of the public interests. Specifically, we have said "there is a local interest in having localized controversies decided at home." *Johnson*, 314 Md. at 526 (quoting *Gilbert*, 330 U.S. at 508); *see also Stidham*, 161 Md. App. at 571–72. Although this Court in *Johnson* did not weigh the local interest factor, the Court of Special Appeals in *Stidham* did. There, the intermediate appellate court considered whether a plaintiff could bring suit in Prince George's County after a car accident in Baltimore County. Reasoning that the trial court properly transferred the action to Baltimore County, the Court explained "the people of Baltimore County have a direct interest in what occurs on Baltimore County roads; the people of Prince George's County do not." *Stidham*, 161 Md. App. at 571–72; *see also Bland v. Norfolk & Western Ry. Co.*, 506 N.E.2d 1291, 1297 (Ill. 1987) (analyzing the locality factor of *forum non conveniens* and holding that Macon County in Illinois had a local interest in an action since it was the situs of plaintiff's alleged injury).

8

We cannot yet say whether doctors in Talbot County or Baltimore City had a greater role, if any, in negligently treating the plaintiff. In *Stidham*, all of the torts allegedly occurred in the same county. Here, Kerrigan alleges multiple torts in both Baltimore and Talbot County. Without more fact finding, the trial court's conclusion that citizens of Talbot County have a greater interest in this case than their fellow Marylanders in Baltimore was not supported.

Additionally, the trial court noted the existence of several large hospitals in Baltimore while only one such hospital operates in Talbot County. Presumably though, healthcare is equally important no matter where one lives or how many hospitals exist in a given municipality. For this reason, to the extent that the trial court implied that the citizens of Talbot County have a greater interest than Baltimoreans in assuring access to safe healthcare, I do not agree.

The Majority today deals a heavy blow to our long-held recognition of a plaintiff's right to choose a venue. *See e.g.*, *Leung*, 354 Md. at 224; *Akers v. Norfolk & W. Ry. Co.*, 378 F.2d 78, 80 (4th Cir. 1967). This Court has never held, until today, that a plaintiff's choice of venue receives less deference when suing where he or she does not live.

Chief Judge Barbera and Judge McDonald have authorized me to state that they join this dissenting opinion.